This is our case 410-0203, in re. Charles K. For the appellant, Ms. Smith, for the athlete, Mr. Londrigan, you may proceed. Please support and counsel. My name is Penelope Smith and I am representing the respondent appellant Charles K. in this matter. Charles K. was a 66-year-old man who found himself in the emergency room of a local hospital after a front desk clerk in a motel where he was staying became concerned about how he was greeting certain guests at the hotel and called the police on him. Police then took him to this local hospital. A petition for his involuntary admission was filed in Macon County and Charles K. demanded a jury trial, which he was granted, as is his right under the Mental Health Code. The jury received several instructions and the problem with about four of the instructions is that they presume that he has a mental illness. The jury was never told that they had to find that he had a mental illness. The definition of a person subject to involuntary admission is found in Section 5-1-119 of the Mental Health Code. There are two ways that a person can be found subject to involuntary admission. The beginning language in both Paragraph 1 and Paragraph 2 are very similar. They start off, a person with a mental illness and who, because of his or her mental illness, is reasonably expected to engage in dangerous conduct. Or a person with a mental illness and who, because of his or her mental illness, is unable to provide for his basic physical needs. A person with mental illness was not placed anywhere in the jury instructions. Instead, the jury instructions read, the respondent will be subject to involuntary admission if, because of his mental illness, he is unable to provide for his basic physical needs. And the same was true, the respondent will be found subject to involuntary admission if, because of his mental illness, he is reasonably expected to inflict serious physical harm upon someone in the near future. And there was yet another instruction. The state has the burden of proving by clear and convincing evidence that the respondent, because of his mental illness, and then it goes into, is unable to provide for his basic physical needs or is reasonably expected to inflict serious physical harm. So that's the third instruction where it indicates because of mental illness and it never says a person with mental illness. And then the final instruction is found at C36 of the record. In order to find the respondent subject to involuntary admission, the state must prove either one or both of the following propositions. And again, the same language is used, because of his mental illness and because of his mental illness. Let's suppose you win on this issue. That is, the instructions are lousy. Does it automatically follow that we should reverse? I.e., isn't the weight of the evidence more than sufficient to establish that, yes, this individual is mentally ill? I mean, if this were a bench trial and you were before us on the same case, you wouldn't really be arguing that the trial judge was wrong if the trial judge in the bench trial found the individual mentally ill. I mean, there isn't even a... I guess you'll get points for me from candor if you agree with my position, so I'm phrasing it wrong. But I mean, this isn't a close case on his behavior and his state of mind and his mental illness. No.  I agree it's not a close case. It's not a close case. So how does it matter, other than... I mean, we want the instructions to be proper. But does it automatically follow that we reverse because these instructions could have implied to the jury that mental illness was already a given? Your Honor, I think that there was only one witness who gave an opinion that this person suffered from a mental illness. It is true that his behavior was somewhat odd based upon his brother's description of the disarray of his house and things of that nature. Greeting several people at a holiday inn, claiming that you're good friends with all of them. But that doesn't necessarily indicate mental illness. What it could indicate is that he exhibited odd or eccentric behavior. It's not necessarily indicative of an actual mental illness. The jury was instructed on what a mental illness is, and that was proper. And I applaud the trial court for doing that. However, I think that any benefit that we might... Why wouldn't that instruction be subsumed into the following instructions? I'm sorry, Your Honor? If the jury's instructed on the definition of a mental illness, and then the further instruction is, if you find that because of a mental illness, A, B, and C, why wouldn't the definitional instruction be subsumed into the latter instructions, which set out what you've got to find as a juror? Because they were never told, Your Honor, that they had to find, by clear and convincing evidence, that Charles Kay suffered from a mental illness. Well, it wasn't the instruction phrased in the... If you find that because of a mental illness, blah, blah, blah, that if presupposes that you've got to decide the predicate question, which is, is there a mental illness, to get to the secondary question. Your Honor, it's my contention that because of the way that it was phrased, there was an underlying current and presumption that we all know this guy has a mental illness, but now all we have to do is find whether he can take care of himself or whether he's a danger to himself or others. It's hard to know exactly what the jury might have thought, but I can easily see how they would have been confused. But the definitional instruction of a mental illness kind of undercuts that. I mean, you've got the definitional instruction of a mental illness, and you've got these other instructions that says, if because of a mental illness, blah, blah, blah. If you take the two of them together, and I understand that there is an IPI instruction on whether or not somebody is suffering from a mental illness.  My question is, would it really mislead any rational juror, if they approach the question, you've got a definition of a mental illness, if Mr. K is suffering a mental illness and then something else occurs, or something else, you know, can't take care of himself, whatever. Yes, Your Honor. I still have to indicate that there was a, because of his mental illness, the way that 1-119 describes a person subject to involuntary admission is a person with mental illness, and who because of that. So that part was left out. It was as though maybe, as Justice Neck indicated in his question to me, because it wasn't a close case, and because there was some irrational behavior going on, that the jury could have just thought, well, they don't want us to really look and determine whether he's mentally ill. We all know, and the court's assuming that, and even the parties are assuming that, that he is mentally ill, and our only job is to find out whether he can care for himself or if he's a danger. Obviously the way that I phrased my question is different than Justice Appleton, but we get back to, and I don't want to say so what, but how does the, why does it necessarily follow, given the weight of the evidence? And you say, well, only one person, but everything the nurse testified to fits with what the psychiatrist testified to. Everything the respondent himself testifies to would have the jury rolling back in their chairs or coming forward more closely so they can listen intently to testimony which is, you know, out of a textbook about mental illness. Well, Your Honor, I'm not sure, though, that the testimony of the nurse and the testimony of the respondent would necessarily... You don't think those bolster the psychiatrist's evaluation? Well, they probably do, yes. But my point is that I don't think that they necessarily meet the definition of a mental illness because the definition of a mental illness is an emotional disorder that substantially impairs a person's thought, perception of reality, emotional process, judgment, behavior, or ability to cope. Again, I have to fall back on that this man may just be seen as odd or eccentric. Well, is it permissible, understanding that time is always, the clock is always an issue in a mental health case. I assume the jury was entitled to know, and as was testified to, he'd spent six months of the previous year in treatment and has been previously diagnosed with a condition which I suppose some, many psychiatrists say, you're not cured, you're just in treatment. Suffered from paranoid schizophrenia for a good part of his life. I mean, we know that about him. This isn't a first-time shot or a person coming in with a clean slate and the state doing its ordinarily inept job of proving mental health cases. Because they do. That's a given. The state doesn't do a very good job on these. Let's pass that home. They didn't give the right instruction. We're past that home. So here you've got a sympathetic audience who's asking you, yeah, but does it really matter given the weight of the evidence? So is there a case that says if the jury, if they're not specifically instructed on that element, we have to reverse? There isn't going to be a mental health case because there are so few of these tried to jury. There probably isn't any case law. So we have an opportunity here to say it doesn't matter what the evidence is, if that element is not crystal clear, we reverse. Or we say the instruction should have been given. You can argue that it's subsumed or implied in the instruction. But either way, the evidence is so overwhelming and uncontradicted that we affirm. Your Honor, mental health involuntary commitments are just a massive curtailment of liberty. I agree. And I think that if there's a chance that even one juror might not have found that Charles K. fit the definition of a person subject to involuntary admission, that is enough. Subject. But they were required to know that for that to be proved. The cause of mental illness. You weren't arguing that they left out the part about involuntary admission. No. But what level of mental illness did there have to be? What level of behavior did there have to be? Is there a jury instruction for that? About levels of mental illness? No, Your Honor, there is not. I mean, it's just a definitional instruction. A mental illness is A, B, C, and D. Yes, it is. Counsel, I'm not even clear how this court gets to your issue. Why is it not forfeited? Your Honor, normally the failure to object to jury instructions is waived. And the Supreme Court has been very clear to this court and other appellate courts, if it's a forfeited issue, you are not to address it. So how do we get over that hurdle here? I think that, Your Honor, waiver is a limitation on the parties, not on the court. The court always has it at its disposal. Deciding an issue because of the nature of the importance of involuntary commitment, going ahead and deciding that and choosing not to apply the waiver doctrine, and I think that's what should be done in this case. I think it's a matter of public opinion. I tend to agree with you that I think it should be done. And I've actually done that in cases. And I've been told by the Supreme Court, no, you don't have the authority to do that. You only have the authority to do that if we say you can do it. I'm very sympathetic to your argument. I'm just not sure, legally, how we get to your issue. It seems to me you're suggesting we should use plain error, but I don't think that's available here. Well, I think that our case that was originally decided by this court was a case where the criminal defense attorney was not notified of the involuntary medication proceedings. And I think that notice is exactly what caused the Illinois Supreme Court to come down against plain error and hold that if you have actual notice, it doesn't matter that you didn't get formal notice. It's an empty formality. So I think that this court has already done this in another case or in other cases. I know there are other cases. I'm sorry, I just can't recite them at the present time. But all I know to say is that I know that mental health cases aren't criminal cases. I know that. And I know that that is well established. But when you're denying the right to a fair trial and your liberty is at stake, then I think that waiver can be set aside and a court can determine that this issue is important enough and we need to give some guidance to the public on this issue, that we're going to go ahead and decide it. And that's, you know, our opinion on the matter. So I think that it clearly does fall within the public interest exception to the mootness doctrine. I know that I haven't been asked about that, but I would just like to point out that I believe that perhaps all three exceptions to the mootness doctrine apply in this case. What jury instructions to use is a question of public nature, and it's obvious that there's guidance needed on how to properly instruct a jury in an involuntary commitment case, and I'm sure this applies to the involuntary medication cases. And given the right to a jury trial, I misspoke. It's not going to apply in an involuntary medication case because there is no right to a jury trial in that case any longer. But given the right to a jury trial in an involuntary commitment case, this issue is going to come up again and again. And it's unfortunate probably if this court were to find poor Charles Kay, that's probably not going to be enough to fix the problem. It's probably going to have to be done over and over again. But I'm afraid that if this situation is passed up, this chance to let the public know that we need to be very careful about what we're instructing our juries because this right to a jury was decided years ago to be sacrosanct. And the Stevenson Court back in 1977 determined what burden of proof applied to these cases. And I think that just as they needed to determine in 1977 what the burden of proof was, I think in 2010 we need to set forth what are proper instructions so that there will not be mistakes made, so that the juries will be instructed, and so that the juries hopefully would be properly instructed on the law and apply that to the evidence in the case. Thank you very much. Thank you, Counsel. Good morning, Your Honors. May it please the Court and the Counsel. After listening to Counsel's presentation and some of the questions from the Court, I'm not sure exactly where to go with this, but my initial position would be that before we get into any discussion of the merits of the propriety of the jury instructions, we have to address the mootness doctrine. Obviously, this is a moot issue, and unless the respondent can establish the exceptions to that doctrine apply or exist, this Court is without authority to review this matter. I can kind of gather from some of the questions that I think the Court is leaning toward, perhaps a public interest exception to the mootness doctrine. However, I would point out that in order to establish that, you're going to have to show that there is a need for this Court to issue an order in this particular area so as to guide public officers in the future. And I would be concerned that the Court would take that position in this matter, because the only justification for that I can see is that there is not an IPI instruction on this issue, and therefore the Court wishes to perhaps take this opportunity to, in fact, fashion one, or at least give suggestions as to what one should be in the future. And although that is, I think, a laudable goal, I would be reluctant to suggest to the Court that they take that tact, because you're going to be establishing, I think, a new criteria for review. Every time there's not an IPI instruction on an issue or a non-IPI instruction is granted, even though it's not preserved, you're suggesting that there's a need now, a public interest need, to craft one. Well, is there an IPI instruction that says this ought to be proven by clear and convincing evidence? I wasn't able to actually find an IPI instruction on the issue of burden of proof as it was laid out in this particular instruction. This is the first jury trial I've ever seen. I've been doing these things for 27 years. I've never seen a jury trial on involuntary commitment, but I understand from counsel that they're quite frequent, although I've never seen one on appeal before. So I did try to find one to see if they departed from it, and I was unsuccessful in that effort. So I would assume that there's no specific IPI instruction, or I just was negligent in discovering it. I did look at the instruction that was offered. Not only do I think that mootness doctrine exceptions have failed to be established, but I think the waiver is clearly here. I mean, this wasn't even discussed at the trial court. There was no objection made to this instruction. There was no alternative instruction tendered. There was no argument made before the trial court that this instruction was inappropriate in any way. Everybody agreed this was a fair recitation of the law. And if you take them as a whole, the jury instructions, I think it is a fair recitation of the law. You know, we can debate about whether additional language might have been better, perhaps more clear, but I don't think that the language used in this instance rises to the level of an improper instruction. I think you have to look at the jury instructions taken as a whole, and when you see the concessions made by respondents, she agrees that the jury was properly instructed on mental illness, that the jury was properly instructed on involuntary admission, and in fact that the jury was properly instructed that involuntary admission had to be proven by clear and convincing evidence. I still haven't seen what the proposed instruction should be. It wasn't given to the trial court. It wasn't given to this court. I tried to listen to the argument, and the best I could come up with was, I think there's a suggestion by a respondent that the instruction should have said with, that you must find by clear and convincing evidence that the respondent suffers with a mental illness and because of that illness, whatever, was found to inflict serious harm upon himself or another. So I assume that's what's being proposed as the appropriate instruction, and I don't feel as though the absence or presence of that word is determinative of this issue. The court has suggested that perhaps they could find some criticism with the instruction given, yet preserve the finding of the trial court, and I think the court could do that, but again I would caution the court in taking that position, at least so far as to finding that this tendered instruction rises to the level of impropriety. You may critique it, criticize it, say it's not the best, suggest something in the alternative that would be better as a guidance to future courts, but if you ruled that it was inappropriate, then I think you open the door to potential problems in the future by arguing, well, we're going to take a look at that volume of the evidence and suggest that the evidence was overwhelming, which I believe it was in this case, the evidence was overwhelming. This guy suffers from a mental illness and because of it he's a danger to himself or others. I think that was clearly proven. So to suggest though that the jury instructions were in error, yet nevertheless the evidence was overwhelming, I think could pose potential problems for the future. What kind of problems? I'm not sure I follow what you're saying. Well, if you're going to suggest that the jury was improperly instructed, and then you're going to suggest that the court then can take a look at the evidence and basically supplant the jury, you're going to say any time the jury is improperly instructed, I think its verdict has to be subject to questioning. And if you say they were improperly instructed, but now we're going to look at the evidence and we're going to basically take the place of the jury here on review and say that no reasonable jury could have found if that's true, then why wasn't summary judgment granted? Why was it ever given to the jury if the evidence was overwhelming? Perhaps a motion was not made. But I just foresee potential problems. I can't, as I stand here this morning, give you all of them, but it just strikes me as one of those tough issues that makes bad future law. Whenever you try to wade into carving out exceptions to try to do good in this particular case, you end up causing, I think, yourself a lot of harm down the road because you can't foresee the ways in which these exceptions are going to be used or abused by future litigants. And that would be my concern. Any time a jury is improperly instructed, I think if you're going to find that, you should be hard-pressed to find that the jury's finding should be affirmed. But we have a body of case law in criminal cases and we have a body of case law in civil cases that have apparently addressed, satisfactorily addressed, what happens when an instruction is incomplete or in error. We're talking about a narrow area of the law where there may be more frequency of jury trials, but they still are not the norm. Thus, trial courts need to be reminded, in particular in mental health cases, that this is real law. This is a legal case where you actually have to ask questions and get answers and those answers have to meet certain standards. And you're more than privy to the frustration that this court has felt in mental health cases. It is as if it isn't real. It's just, we're trying to do a good thing and it's sort of a social working, you know, this guy's in trouble, let's see if we can help him, so everybody just goes through the motions. Instead of a young prosecutor being excited that he's got a jury demand in a mental health case, it's, oh, you know, we've got to slap together jury instructions now. And I understand they may be overburdened and overworked and thrust into a position that they're not familiar with, but that happens in every area of the law and you have to learn it and do it right. What's wrong with saying, not that they weren't properly instructed, because that suggests that it was somehow meant to be, but they weren't fully instructed. Had they been fully instructed to get the definition of mental illness, the state must prove, by clear and convincing evidence, that the guy's mentally ill before you go on to anything else. I think I could draft an instruction in 30 seconds. And I thought we would make it. One, two, three, and if you don't find one, forget about it. Go home, folks. The unique idea that jury instructions should actually be comprehensible to the average citizen. Honestly, Judge, I think this is pretty great. If you read it carefully the way that we would read it, it's a give. I think Justice Appleton's critique is well placed, honestly. I mean, the respondent will be something of an expert. He used the word subsumed. Did I say that? So the other juror said, ah, yes. This is subsumed. It's like a chart in the jury room wall. This is subsumed into the other, and this one is a collateral. I'm saying it should be taken as a whole. And I think that that's fair. I mean, the instruction says... That's why they never put me on the IPI. Well, he'll be subject to involuntary admission if, because of his mental illness, he's reasonably expected to... So you have to find that he's got a mental illness first, don't you? If, because of his mental illness, this is going to happen. I mean, is there any other way to get to whether or not he's a danger to himself? It doesn't matter if he's a danger to himself because he's a goofball. I think the suggestion was that, what, maybe ill-tempered, or I forget what respondent's argument in their brief was. I don't suggest by my comments that I'm... I don't mean to insult the intelligence of the jurors. But everybody that writes anything, an insurance contract, a piece of legislation, a judicial opinion, an answer to an interrogatory, they all think, I've done it right. It's clearly communicated. And then when it is communicated, you've got a group of people over here that say it means one thing, and a group of people over here that say it means something completely different. And lawsuits happen because people can't agree on what words mean. The English language is a poor form of communication, but it's all we have, and that's why we have this body of law on waiver. If you've got a defendant present... I thought you might get that. I mean, they had their chance to do this, and, you know, to critique it and to argue what it could have been, and polish it up, time to do that, it's a trial. Of course, a cynic could say there would be no body of case law in mental health cases if waiver and forfeiture were routinely applied, because it is seldom that an appropriate objection is made or brought to the court's attention. Judge, you're doing this completely wrong. We have to have this, and we have to have that. Nobody ever says that. Or, if they say that, we're unaware of it. We don't find it in the records that come before us. So if it's always waiver or always forfeiture, where does the guidance or correction come from? Across the street? Do you put in the mental health code that if you're going to have mental health cases, you better give them jury instructions, and the jury instructions ought to be right? And if not? Well, yeah, the Supreme Court's responsible for creating IPI instructions, and if they haven't created one in the system, I guess they feel as though one's unnecessary, although I was surprised as well as the court not to find one. And if these things are more frequent than I had knowledge of, then, yeah, I would think that someone would get around to crafting an IPI instruction. But does this court want to take the burden of creating IPI instructions or the effect of an IPI instruction in every instance in which one doesn't exist? And I think the Supreme Court would probably direct this court otherwise. If there's nothing further, Your Honor. Thank you. Thank you. Rebuttal? Ms. Smith? Thank you. I would be happy to answer any questions that the court would still have about any of the issues, but I don't have anything specifically to present in rebuttal. You've gained points for stand or answer. Thank you. Thank you.